HAMMOND *et al.*, *Appellants*, v. HORTON *et al.*

### Division One, January 22, 1897.

1. **Land Titles:** EQUITY OF REDEMPTION: SALE ON EXECUTION: VALIDITY OF TITLE. The act of the General Assembly of June 28, 1821 (1 Ter. Laws, p. 778), provided, that where land was sold on execution the sheriff should deliver to the purchaser a certificate of purchase; that the debtor might redeem from the sale within two and a half years; that if he did not do so creditors might redeem within three years and that if there was no redemption the sheriff should execute a deed to the purchaser. This law was repealed by the act of January 11, 1822, which contained a provision that it should not render invalid any proceedings had under the former act before its repeal. Land was sold, under execution, August 24, 1821. The equity of redemption of the judgment debtor was sold to other creditors after the repeal of the act of June 28, 1821. Before the time for

redemption had expired the purchaser at the first sale quitclaimed all his interest in the land to the purchasers of the equity of redemption. *Held,* that the equity of redemption was subject to sale on execution and its purchasers, through the quitclaim deed, acquired the entire interest of the execution debtor.

2. ———: ———: ———. Subsequent judgment creditors were by the repeal of the redemption law remitted to the general law for the purpose of enforcing their judgments.

### *Appeal from St. Louis Circuit Court.*

AFFIRMED.

*George F. Edmunds, D. T. Jewett,* and *Henry H. Dennison* for appellants.

(1) Relfe and Chew had no right to redeem from the sale to Simpson under two years and six months after the sale to Simpson, by the terms of the statute, therefore their sale in October, 1823, was void, as Hammond had the exclusive right to redeem for two years and six months after August 24, 1821. (2) The law only allowed one sale on execution, and all other creditors who sought must redeem from that sale and could not acquire any right by a sale on execution at any time within three years. (3) The repeal of the law before the sale by Relfe and Chew did not affect the question or give new rights to creditors to sell the right to redeem, as the repealing act had a clause protecting all rights acquired under that act. The sale by Relfe and Chew did not purport to sell a right to redeem from the sale to Simpson, and was therefore void for uncertainty, as well as for other reasons. (4) The sale to Relfe and Chew, if it could take anything, could only take a right to have a sheriff's deed, under and by virtue of the sale to Simpson, as the law required a sheriff's deed to complete that sale, and they never got that, therefore got nothing. (5) The sale

to Relfe and Chew only covered two hundred and four acres, not the two hundred and forty acres sold to Simpson, and they could not redeem an undivided part of the land sold to Simpson—it must certainly be the whole or none.   They could not compel Simpson to give up to them an undivided fraction of what he had bought and leave a part unredeemed, and the sale was therefore void for that reason.   (6) It was also void as a redemption from Simpson, because the return of the sheriff on the execution in favor of Relfe and Chew shows that it was not intended as a redemption from Simpson, because the return on the execution shows that the hundred dollars which was bid for the land at the sale to Relfe and Chew was indorsed on their execution, and therefore did not go to Simpson. (7) Relfe and Chew could not, at sheriff's sale, October 8, 1823, buy Hammond's equitable right to a patent, because that right was then in Simpson, and could not be taken from him except by redemption and payment of his claim.   (8) An execution sale can take only what the debtor has at the time of sale, and must take under the law, and if the sale takes nothing at the time of sale, it takes no after-acquired rights.   *White v. Davis*, 50 Mo. 333; *Mann v. Best*, 62 Mo. 491.   (9) Neither the sheriff's sale to Simpson, nor the sheriff's sale to Relfe and Chew, passed any title, either equitable or otherwise, to anyone, as, at the time of said sales, Hammond had no title, legal or equitable, to said land, as no title of any kind to said land had, at that time, passed out of the United States to Easton or anyone else, and did not pass until January, 1833, when the said survey, made by the surveyor-general, was returned to the recorder of land titles, and was approved by him and recorded; then, and not till then, the equitable right to said land passed to Easton and from him to Hammond, by virtue of said Easton's

warranty deed to Hammond, in 1823. *Bagnell v. Broderick*, 13 Pet. 436; *Barry v. Gamble*, 3 How. 60; *Hale v. Gaines*, 22 How. 159; *Rector v. Ashley*, 6 Wall. 142; *Gibson v. Chouteau*, 13 Wall. 92; *McKay v. Easton*, 19 Wall. 633; *Hot Springs Cases*, 5 Otto, 712.

*James M. Lewis* for respondents.

(1) The sale of the land under execution against Hammond in 1823, carried the whole title, and all of the title, which Hammond ever had, was fully vested in the defendants when this suit was begun. This question has been adjudicated so often, that there is no further room for argument on the subject. *Hammond v. Johnston*, 93 Mo. 198; *Hammond v. Gordon*, 93 Mo. 223; *Block v. Morrison*, 112 Mo. 346; *Hammond v. Johnston*, 142 U. S. 73; *Hammond v. Ins. Co.* and *Hammond v. Gordon* (consolidated), 150 U. S. 633; *Kingman v. Holthaus*, 59 Fed. Rep. (2) Both parties claim under a common source of title. As the United States court well said, for nearly fifty years after Hammond had disclaimed all title to the land, the defendants and those through whom they claim have been in the undisputed possession of the land under claim of title. "In such a case, if there be a single weapon in the whole armory of justice to beat off assaults upon such occupants it ought to be employed in a court of justice." The opinion rendered by the trial court shows, wherever the question has been tried it has been held that the plaintiffs have no standing, for the obvious reason that both plaintiffs and defendants claiming under the same source of title, the doctrine of title by relation vested in the purchasers at the sale under execution against Hammond his then equitable but vendible interest, which on becoming afterward a legal title from the United States, inured to the benefit of those

purchasers and their grantees. *Massey v. Papin*, 24 How. 362; *Landis v. Brant*, 10 How. 348; *Shepley v. Cowen*, 91 U. S. 337, 338; *Callahan v. Davis*, 90 Mo. 78. (3) The act of June 28, 1821, is without bearing on the issues in this case. (4) The· claim that the sheriff's deed to Relfe and Chew is void for uncertainty is without merit.

*Collins & Jamison* for respondents.

(1) With the single exception of such matters as pertain to the sheriff's sale to Simpson, the supreme court of Missouri and the supreme court of the United States have considered and forever settled all points made in the appellants' brief. *Hammond v. Johnston*, 93 Mo. 198; *Hammond v. Gordon*, 93 Mo. 223; *Block v. Morrison*, 112 Mo. 346; *Hammond v. Johnston*, 142 U. S. 73; *Hammond v. Conn. L. Ins. Co.* and *Hammond v. Gordon* (consolidated), 150 U. S. 633. (2) An equitable interest in real estate can be seized and sold on execution. *Brandt v. Robertson*, 16 Mo. 149; *Hammond v. Johnston*, 93 Mo. 198. (3) If the sheriff's sale to Robert Simpson was a valid sale, and operated to pass Samuel Hammond's title, then plaintiffs were not entitled to recover in this action, and the title is outstanding; nay, more, Simpson conveyed such title to Relfe and Chew, and by mesne conveyances same is now vested in the defendants. (4) Under the laws of Missouri then in force, Samuel Hammond had the right within two and one half years from the·date of the sale by the sheriff to Simpson to redeem the land sold, and any creditor of Samuel Hammond had the right within three years from the date of the sale by sheriff to Simpson to redeem said land. (5) It was competent and legal for the sheriff, acting under the execution issued on the judgment dated May 22, 1823, to seize and sell Samuel Hammond's equitable right to redeem from the

sale by sheriff to Simpson. (6) At the date of the levy and sale by sheriff to Relfe and Chew, the act of the legislature of Missouri, which gave to Hammond and his creditors the right to redeem under the Simpson sale, had been repealed, and after such repeal the creditors of Samuel Hammond had the unquestionable right to enforce their judgments against him. 1 Territorial Laws of Missouri, p. 862. (7) By virtue of the sheriff's sale on October 8, 1823, Relfe and Chew acquired all of Samuel Hammond's right, title, and interest in and to the land in controversy, including his right to redeem same from the sale by sheriff to Robert Simpson, and therefore the quitclaim deed from Simpson to Relfe and Chew, dated January 20, 1824, must be regarded as a redemption from that sale, and whatever title Simpson acquired is now vested in the defendants.

*John B. Henderson* also for respondents.

MACFARLANE, J.—This suit is ejectment to recover a small tract of land being a part of a tract of four hundred and eighty acres located under a New Madrid certificate (number 161), and known as United States survey number 2500.

The New Madrid claim was located by Rufus Easton, as assignee of Joseph Hunot, in June, 1818. The patent from the United States was issued to said Hunot or his legal representatives in 1859.

In September, 1818, Easton as assignee of Hunot, made a bond for title to Samuel Hammond and James J. Wilkerson. On the eighth day of October, 1823, the land was sold by the sheriff to Relfe and Chew under an execution on a judgment, in their favor and against Hammond, dated in May, 1823. Defendants claim under a deed of the sheriff made in pursuance of

this sale.   Plaintiffs claim title under a warranty deed from Easton to Hammond dated September 29, 1823.

The title, as thus briefly detailed, has been passed upon in former appeals in this and other cases.  *Hammond v. Johnston*, 93 Mo. 198;  *Hammond v. Gordon*, 93 Mo. 223;  *Block v. Morrison*, 112 Mo. 346.   A full statement of the facts can be found by an examination of these cases.   Under these decisions the title was adjudged to be in defendants.

On a retrial of this case the following new facts were developed:   Three judgments were rendered against Hammond, two of them May 4, 1820, and the other April 26, 1821.   Executions were issued on these judgments, and August 24, 1821, the land was sold thereunder to Robert Simpson, to whom the sheriff gave a certificate of purchase under the law then in force.   Robert Simpson, under date of January 20, 1824, by quitclaim deed conveyed the land to Relfe and Chew.

In the former decisions it was held that the title bond, from Easton to Hammond, vested in the latter an equitable right to the land, which was vendible under execution; that the sheriff's sale of October, 1823, under execution upon the judgment against Hammond and the deed thereunder, vested in Relfe and Chew, the purchasers, the equitable rights of Hammond; and the patent thereafter issued, by the United States, to Hunot or "his legal representatives," vested the legal title in the defendants, who are the grantees of Relfe and Chew.

Plaintiffs now insist that the title of Hammond was cut off or suspended by the previous sale to Simpson, and, at the time of the sale to Relfe and Chew, Hammond had no interest whatever in the land, and the sale carried none to the purchasers.   That no deed having been made under the sheriff's sale to Simpson,

the title at the termination of the period for redemption became revested in Hammond, and afterward in plaintiffs, who are his heirs and grantees.

An act of the general assembly approved June 28, 1821, provided that, on sale of land under execution, the sheriff, instead of a deed, should give to the purchaser a certificate in writing, describing the land purchased, the sum paid therefor, and the time when the purchaser would be entitled to a deed unless the land should be redeemed. Within ten days after the sale the sheriff was required to file a duplicate of such certificate in the office of the clerk for record.

The act further provided that it should be lawful for any defendant, his heirs, executors, administrators and assigns, whose lands should be sold by virtue of any execution within two and one half years from the date of such sale, to redeem such lands by paying to the purchaser thereof, his executors, administrators or assigns, or to the sheriff for the benefit of such purchaser, the sum of money paid with interest, and still further, that it should be lawful for any creditor who should have a judgment against any such defendant to redeem such land within three years in default of such defendant to redeem the same; that when such creditor should redeem he should be entitled to acquire all the rights of the original purchaser; that if such land should not be redeemed either by such defendant or by such creditor within three years from the date of such sale, it should be the duty of the sheriff to execute a deed to such purchaser; that if any such creditor should redeem as aforesaid, it should be the duty of the sheriff to execute a deed to such creditor as the assignee of the original purchaser. 1 Terr. Laws, p. 778.

This law was repealed by an act approved January 11, 1822. 1 Terr. Laws, p. 862. The repealing act contained this *proviso:* "Nothing herein contained

shall be construed to render invalid any proceedings had under the authority of the said recited act before the repealing thereof.''

The sale to Simpson was made while this law was in force, and the sheriff gave him the required certificate. The sale to Relfe and Chew was made after the repeal of the law but before the time allowed for redemption from the Simpson purchase had expired. The quitclaim deed from Simpson to Relfe and Chew was also made before the expiration of the time for redemption.

Plaintiffs now claim that the sheriff's deed to Relfe and Chew is void under a proper construction of the redemption law. It is said that Hammond had the exclusive right to redeem for two and one half years after the date of the sale, during which time another judgment creditor had no right to proceed against the land by sale under execution or to redeem from the sale to Simpson. That after the expiration of that period the creditor could only proceed by redemption and by taking a deed from the sheriff under the sale to Simpson.

There would be much force in the argument if the redemption law had been in force when the sale to Relfe and Chew was made. But the law was repealed long prior to the rendition of the judgment under which they purchased. It becomes necessary to inquire what remedies were open to Relfe and Chew under their judgment.

The repeal of the special redemption law left the general law respecting the law of land under execution in full force except as to persons who had secured rights under it. Hammond had the right to redeem his property from the sale to Simpson, and Simpson had the right to a deed under his purchase in case the land was not redeemed. The repeal of the law did not affect these rights. The judgment of Relfe and Chew

was not rendered until after the repeal of the law, and they took, by virtue of the judgment, no rights under the repealed law. They had no right to redeem from the Simpson sale in the manner provided by the law, nor could they enforce their judgment by execution so as to defeat the rights of Simpson.

Under the general law a judgment creditor had the right to an execution, and, thereunder, to make a sale of any property belonging to the debtor which was subject to execution. Was the land as it stood at the date of the sale to Relfe and Chew subject to sale "without rendering invalid any proceedings" had under the repealed law?

The certificate of purchase delivered to Simpson by the sheriff gave him the right to a deed if neither Hammond nor any of his judgment creditors redeemed within the prescribed time. A sale under a junior judgment could not take away or affect that right. So the sale under execution to Relfe and Chew did not render invalid the previous sale to Simpson.

Under the proceedings, which resulted in a sale to Simpson, Hammond only secured the personal right of redemption for two and a half years. The right of judgment creditors to redeem after that time was given as a remedy to such creditors and not as a right to Hammond. By the repeal of the redemption law subsequent judgment creditors were remitted to the general law for enforcing their judgments.

It is insisted that the rights given to Simpson and Hammond under the redemption law precluded a sale under a judgment subsequently acquired by other creditors. We do not think so. The act gave, not only to Hammond, but to his heirs and assigns, the right to redeem. The act, therefore, necessarily contemplated the right in Hammond to sell and transfer his interest to another. He continued to hold the

equity of redemption, which he could, by his own act and deed, transfer, and whatever interest an owner could transfer by deed was subject to sale and conveyance under execution. This was distinctly held in *Block v. Morrison*, 112 Mo. 350. See, also, *McClean v. Harris*, 14 Lea, 513; *Thayer v. Coldren*, 57 Iowa, 113.

The sale under the execution operated as a conveyance of all the interest of Hammond, including the right of redemption. The quitclaim deed from Simpson operated as a release of his rights to Relfe and Chew, and the entire interest of Hammond became vested in them, freed from the rights of Simpson under his certificate of purchase.

The title of defendants, therefore, was not affected by the sale to Simpson, and the judgment for defendants was proper under the former decisions of this court wherein the same title was involved. *Hammond v. Johnston*, 93 Mo. 198; *Block v. Morrison, supra.*

The judgment is affirmed. BARCLAY, J., does not sit. The other judges of this division concur.